## INSURANCE COMPANY *v.* PIAGGIO.

1. A. brought suit on a policy on vessel and freight, for a total loss. The jury found the whole amount insured *with interest* and $5000 besides for damages, and judgment was entered accordingly. *Held,* that the party could not recover damages beyond legal interest, and that there was error on the face of the record.

2. The error *held,* however, not to require a *venire de novo,* but to be such that, under the "Act to further the administration of justice" (17 Stat. at Large, 197), the court could reverse the judgment and modify it by disallowing the $5000, and remanding the case with directions to enter judgment for the residue found by the jury with interest ;—the case being one where all the facts were apparent in the record, though not by a special verdict in form.

3. It is not error to charge that a party assured had no right to abandon, when the insurers have accepted the abandonment.

4. Nor to refuse to charge that an abandonment made through error, and so accepted, is void if not warranted by the policy, when no evidence had been given of error by either side.

5. A judgment will not be reversed for want of a charge requested when the record contains no sufficient information that the charge requested was material to the issues.

6. Nor because the court charges in a way which, though right in the abstract, may not be so in application, when the record does not show that sufficient evidence had not been given to warrant the jury in passing on the question.

ERROR to the Circuit Court for the District of Louisiana, in which court Piaggio brought suit against the New Orleans Insurance Company for a total loss, under two policies of insurance : the one for $7000, on the brig Sicilia, and the other for $5000 on her freight.

The petition alleged that the brig, having sailed from New Orleans for Helsingfors, in the Gulf of Finland, July 20th, 1870, was compelled "by the perils of the seas *and unavoidable accidents,*" to put into Matanzas, Cuba; that the plaintiff, upon news of the disaster, gave information to the insurers and asked whether he should abandon the vessel, and was advised so to do; that thereupon he abandoned to the insurers, and claimed for a total loss, and the abandonment was accepted.

It further alleged that the brig, while in the port of Matanzas, was driven ashore by a hurricane, and, with her cargo, wrecked and entirely lost.

It further alleged that the insurers promised to pay the insurance on freight, and informed the plaintiff that they would telegraph to their bankers in London to pay the same to the plaintiff's order, but that soon after they declined to pay or recognize the loss, and recalled their instructions for payment given to their bankers; that when the plaintiff was informed that the insurance on freight would be paid, he drew against the amount on his correspondent in Genoa, to whom he had transferred the certificate of insurance on freight; that his draft was protested, and thereby his credit injured and his business damaged to the extent of $15,000.

It further alleged that the defendants had *re*insured on this risk $10,000 with another company on the *cargo* of the vessel, and had paid to the said company the loss on said risk.

The plaintiff claimed the sums insured on the vessel and freight, and the damage of $15,000 with interest, for the non-payment.

The answer of the defendants put in issue, by denial, all the allegations of the petition, alleged that the policies were void for non-payment of premiums; that the brig was unseaworthy; that she put into Matanzas from unseaworthiness, and not from perils of the seas; and that there, the plaintiff's agents finding it impossible to raise money by bottomry to make her seaworthy, telegraphed a false account of her disasters, and that the defendants, trusting thereto, assented to abandonment, and, to accommodate the plaintiff, were willing to advance funds without waiting for the proofs and delays required by the policy; that learning the truth as to the abandonment, they revoked their acceptance of it, and declined to make the accommodation advances.

The answer then alleged that the policies were vitiated by the brig's deviation in voluntarily putting into Matanzas.

The policy set out in the plaintiff's petition contained clauses:

" Warranted not to use ports in the West India Islands between July 15th and October 15th.

" No loss except general average shall in any case be paid unless amounting to 75 per cent., after deducting proceeds of savings, if any, and exclusive of all charges of ascertaining and proving the loss."

On the trial the defendants requested the court to charge:

" 1. That if the jury find that the plaintiff abandoned the voyage when he had no right to make the abandonment of the Sicilia, by reason of repairs needed, falling short of the 75 per cent. of valuation of said Sicilia, under the warranty of the policy on the hull, then the plaintiff cannot recover on the policy for the freight, and his abandonment of the freight-list to the insurers did not bind the latter."

" The court refused to give this charge because it was in proof that an abandonment had been made and accepted without fraud, and under and in accordance with the advice of the defendant."

" 2. That an abandonment made by plaintiff through error, and accepted through error by the defendant, whether conditionally or unconditionally, is null and void, if not warranted at the time under the policy of insurance."

" This was refused as irrelevant; no evidence having been adduced of error by either party. The court therefore considered it to be merely a speculative instruction or charge."

" 3. As the policy of insurance warrants that the insurers would be liable only for total loss, or constructive total loss, when the damage exceeded 75 per cent., if the jury find that the damage to the brig Sicilia, when in the port of Matanzas, did not exceed 75 per cent. of the value put on her in the policy after deductions stated in said policy, then the plaintiff had no right to make an abandonment."

" The court refused to give the charge because it was in proof that an abandonment had been made and accepted without fraud, and under and in accordance with the advice of the defendant."

" 4. That the reinsurance by the defendants of the cargo of

the Sicilia to the amount of $10,000, which had been insured by another company, not being made in favor of the plaintiff; who was a total stranger to this transaction, has no connection with the issues raised as to the policy on the hull and freight of the Sicilia, and therefore can have no bearing on the decision of this jury; and that in the absence of proof as to the warranties in said insurance and reinsurance policies of $10,000 on the cargo, it is impossible to determine whether or not the payment and reimbursement of the said $10,000 were properly and correctly made; and that whether properly or improperly made that circumstance cannot militate either for or against either the plaintiff or defendant in the present controversy."

" The court refused to give the said charge;" no reason being assigned.

To these four refusals the defendants excepted.

The court charged (the defendants again excepting):

"That independent of the abandonment, if the jury believe there was an actual total loss by storm and disaster of the sea, the plaintiff has a right to recover."

The jury found a verdict in these words:

" That the plaintiff shall recover from defendants the sum of $7000 under his policy of insurance in the hull of the vessel; the sum of $5700, gold coin, under his policy of insurance in the freight-list; *together with interest on these two amounts*, as prayed for in his petition; ☞ and the further sum of $5000 damages, with interest at the rate of 5 per cent. from the date of judicial demand."

A motion to set aside the verdict and for a new trial being refused, the court thus entered its judgment:

" By reason of the verdict and in accordance therewith it is ordered, adjudged, and decreed, that the plaintiff do have and recover of the defendant the sum of $7000 under his policy on the hull of brig Sicilia; the sum of $5700, gold coin, under his policy on the freight-list; *together with 5 per cent. interest on said two sums from September 29th*, 1870, *till paid;* ☞ and the further sum of $5000 damages, with 5 per cent. interest from the 14th of December, the day of judicial demand, till paid, and costs of suit."

The return to this court did not contain any of the evidence given at the trial, which seemed to have occupied several days, with an examination of seven witnesses orally, and numerous documents.

The case came here by writ of error; on the following assignment of errors:

I. The allowance and computation in the judgment of damages, for non-payment of the freight insurance, to wit, $5000, and interest thereon, over and above the full sums insured in both policies and interest thereon.

II. The allowance and computation in the judgment of the loss under the vessel policy, notwithstanding the breach of the warranty against the use of West India ports in that policy, and the loss of the vessel in such a port during such breach.

III. The errors in the refusals to charge, and in the charge, as already set forth in the five bills of exceptions and the foregoing statement.

*Mr. W. M. Evarts, for the plaintiff in error:*

I. It is not necessary to argue, or adduce authorities for, the proposition that interest is the only damages for the simple non-payment of money according to duty, or to implied or express contract. That the allowance of $5000 as damages, over and above the insurance-moneys, *and interest* on them, was error, on the face of the record, and without any reference to any possible evidence or ruling at the trial, and that, for this error, the judgment below must be reversed, is indisputable.

II. As to the second ground for a new trial for error apparent upon the record, to wit: the breach of warranty, in the use of the West India port of Matanzas, and the wreck by a hurricane in that port, the only question seems to be as to the consequence of the absence from the record of any evidence bearing upon the point of this resort to the port of Matanzas being voluntary or under stress from perils insured against. But, on the face of the contract, a breach of its warranty arises by the resort to this West India port, and

the wreck from peril there supervening. The affirmative proof to defeat this consequence of this apparent breach of warranty is wholly wanting. Presumptively, no such proof was offered at the trial. It is not allowable for the plaintiff in error to incumber the record by *all the evidence at the trial* upon the motive and to the end of showing that no such proof was given. The defendant in error should have procured the presence of such evidence, if any was given at the trial, by the appropriate applications in the court below or in this court.

III. The errors exhibited on the bills of exception.

1st. The instruction asked for and refused, and made the occasion of the first bill of exceptions, was proper to be given, and the refusal to give it was error. The court put its refusal to give this instruction upon the single ground "that it was in proof that an abandonment had been made and accepted without fraud, and under and in accordance with the advice of the defendants." But this was in issue on the pleadings and proofs, and was the very thing to be passed upon by the jury. The court refused a proper instruction, on a question of law, by usurpation of the province of the jury, on a question of fact.

2d. The same observations, in substance, apply to the second bill. A proper instruction, as matter of law, is refused upon an assumption of a conclusion of fact, which belonged to the jury.

3d. The error under the third bill is of the same character as that under the first; the observations made upon that are applicable to this.

4th. The instruction asked for and refused was clearly proper, and the exception in the fourth bill was well taken. The evidence had been taken upon this extraneous transaction, and for the purpose of affecting the verdict of the jury, which it was well calculated to do. The court was rightly called upon to exclude this consideration from affecting the mind of the jury, unless it was, in law, a proper subject for their consideration in this case. It manifestly was not proper, as an element in the jury's conclusions in this case.

5th. The passage in the charge of the judge which is made the subject of the fifth bill, as an abstract and general proposition, may be unobjectionable. But, indisputably, the only "actual total loss by storms and disaster of the sea," was by the hurricane in the port of Matanzas, and this naked charge, applied to this state of facts, was equivalent to a peremptory charge that, without regard to the antecedent history of the voyage, or to the warranties of the policies, the plaintiffs had a right to recover for a total loss under both policies. But this depends upon the question whether the total wreck by the hurricane, in the port of Matanzas, was covered or not by the policies, as an original and independent cause of loss. And this depended upon the previous history of the voyage, and could only be disposed of by the verdict of the jury, under proper instructions from the court, covering these anterior considerations.

*Mr. T. J. Durant, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Due application was made by the plaintiff to the corporation defendants for a policy of insurance upon the brig Sicilia, of which he was the owner, and on the 11th of July, 1870, he effected with the defendants such a contract, for the period of one year, lost or not lost, the brig then lying in the port of New Orleans, whereby the defendants insured the vessel against the perils of the seas and other risks of her intended voyages, as more fully appears in the policy.

It also appears that the plaintiff, five days later, having freighted the brig with cotton for Helsingfors, in the Gulf of Finland, also effected insurance, with the defendants, upon her freight list for $5700, payable to his own order in gold, as shown by the certificate filed in the case, which represents and takes the place of a policy as fully as if the property was covered by such an instrument, issued direct to the holder of the certificate.

Well appointed and in good order and condition, the brig, on the 20th of the same month, left her port of departure

laden with a valuable cargo of cotton and properly officered and manned, but was subsequently compelled, by perils of the seas and unavoidable accidents, to put into the port of Matanzas, Cuba, in distress and disabled, for the security of the property concerned and the preservation of the lives of those on board [?], that being disabled and in want of repairs she remained in that harbor for that purpose, and that while there, and before her repairs were completed, she was driven ashore by a hurricane, and in spite of every exertion which could be made to save her, was wrecked, and, with her cargo, was entirely lost.

Payment of the sums insured being refused, the plaintiff instituted the present suit to recover the amount, claiming also $15,000 in addition thereto, as damages for the delay in fulfilling the contract. Testimony was taken, and the parties went to trial; and the jury, under the instructions of the court, returned a verdict for the plaintiff, and the defendants excepted and sued out the present writ of error.

By the terms of the policy, the brig was valued at $10,000, but the risk taken by the defendants on the vessel was only $7000, as appears by the policy.

Exceptions were taken by the defendants to the refusal of the court to instruct the jury, as requested, and to the instructions given by the court to the jury, and they also assign for error the finding by the jury, of $5000 damages, and the allowance of the same in the judgment of the court, and also, of the allowance in the judgment of the loss under the policy.

These allowances are specified in the verdict, substantially as follows: That the plaintiff shall recover the sum of $7000 under his policy on the vessel, the sum of $5700, gold coin, under his policy on the freight list, with interest, as prayed in his petition, and the further sum of $5000 damages, with interest at the rate of five per cent. from the date of judicial demand.

Judgment was rendered for the plaintiff, as follows: By reason of the verdict it is ordered, adjudged, and decreed that the plaintiff do have and recover the sum of $7000

under his policy on the brig, the sum, of $5700, gold coin, under his policy on the freight list, together with five per cent. interest on said two sums from September 29th, 1870, till paid; and the further sum of $5000 damages, with five per cent. interest from the 14th of December, the day of judicial demand, till paid, and costs of suit.

Errors apparent in other parts of the record may be re-examined, as well as those which are shown in the bill or bills of exceptions, and it is too plain for argument that the verdict and judgment are a part of the record. Whenever the error is apparent in the record the rule is that it is open to re-examination, whether it be made to appear by bill of exceptions or in any other manner; and it is everywhere admitted that a writ of error will lie when a party is aggrieved by an error in the foundation, proceedings, judgment, or execution of a suit in a court of record.*

Damages were claimed by the plaintiff in this case for alleged loss on account of the failure of the defendants to make payments as stipulated in the policy, and it appears by the verdict that the jury awarded to the plaintiff $5000 on that account, in addition to lawful interest. Apart from that, it also appears that the court, in computing the judgment, allowed the same sum for the same claim.

Interest is allowable as damages in such a case from the time the payments were due, or from demand made, where the defendant refuses to account or make payment, but the plaintiff cannot recover special damages for the detention of money due to him beyond what the law allows as interest.† Where a principal sum is to be paid at a specific time, the law implies an agreement to make good the loss arising from a default by the payment of lawful interest.‡

---

* Suydam *v.* Williamson, 20 Howard, 433, 437; Bennett *v.* Butterworth, 11 Id. 669; Slacum *v.* Pomeroy, 6 Cranch, 221; Garland *v.* Davis, 4 Howard, 131; Cohens *v.* Virginia, 6 Wheaton, 410.

† Kendall *v.* Stokes, 3 Howard, 102; Pope *v.* Barret, 1 Mason, 117; See right *v.* Calbraith, 4 Dallas, 325.

‡ Robinson *v.* Bland, 2 Burrows, 1086; Sedgwick on Damages, 4th ed 434.

Tested by these considerations, it is quite clear that the act of the jury in allowing the plaintiff $5000 for the detention of the money due under the policies, in addition to lawful interest, and the act of the Circuit Court in including that amount in the judgment, were erroneous; and inasmuch as the error is apparent both in the verdict and in the judgment, it is equally clear that it is a matter which is re-examinable in this court on a writ of error; and, having come to that conclusion, the only remaining inquiry in this connection is what disposition shall be made of the case.

Errors of the kind, it is insisted by the defendants, necessarily require that a new *venire* shall be ordered, but the act of Congress to further the administration of justice* provides that the appellate court may affirm, modify, or reverse the judgment, decree, or order brought before it for review, or may direct such judgment, decree, or order to be rendered, or such further proceedings to be had by the inferior court as the justice of the case may require; and in view of that provision the court is not inclined to adopt the course suggested by the defendants, as it would lead to unnecessary delay and expense.

Verdicts, it is said, are either general or special, and that if there is error in a case where the verdict is general it can only be corrected by a new trial, and it must be admitted that the rule as suggested finds much countenance in the text-books; nor will it be necessary to depart from that rule in the present case. Strictly speaking, a special verdict is where the jury find the facts of the case and refer the decision of the cause to the court, with a conditional conclusion, that if the court is of the opinion, upon the whole matter as found, that the plaintiff is entitled to recover, then the jury find for the plaintiff; but if otherwise, then they find for the defendant.†

Examples of special verdicts less formal, however, may be found, and the usual course is to sustain such verdicts if

---

* 17 Stat. at Large, 197.

† Mumford *v.* Wardell, 6 Wallace, 432; Suydam *v.* Williamson, 20 Howard, 432; 3 Blackstone's Commentaries, 377.

they contain all the facts necessary to a proper judgment between the parties in respect to the matter in controversy. Courts also, in the trial of issues of fact, often propound questions to a jury, and the rule is well settled that such a special finding, even when it is inconsistent with the general verdict, shall control in determining what judgment shall be rendered in the case.*

Undoubtedly a special verdict is erroneous if it does not find all the facts essential to the rendering of the judgment; but if it contain all the facts required for that purpose the better opinion is that the court of original jurisdiction may render such judgment as the facts found require, and if they err, and the error is apparent in the record, that such error may be re-examined on writ of error in this court.†

Confirmation of this view as the correct one is also derived from the act of Congress‡ which permits parties to waive a jury, and submit the issues of fact, in civil cases, to the court, as the provision in that act is that the finding may be general or special, and that it shall have the same effect as the verdict of a jury. Special findings, under that provision, never have a conditional conclusion, and yet the review extends, by the express words of the act, to the determination of the sufficiency of the facts found to support the judgment.

All the facts are found in this case, and they are all apparent in the record, and inasmuch as the question to be determined is what judgment ought to be rendered on those facts, the court is of the opinion that it is not necessary to order a new *venire*.

Five bills of exceptions were tendered and allowed, as follows:

* Rambo v. Wyatt, 32 Alabama, 363; Fraschieris v. Henriques, 6 Abbott Practice Cases (N. S.), 263; Anonymous, 3 Salkeld, 373; Trust Company v. Harris, 2 Bosworth, 87; Adamson v. Rose, 30 Indiana, 383.

† O'Brien v. Palmer, 49 Illinois, 73; Manning v. Monaghan, 23 New York, 541; Seward v. Jackson, 8 Cowen, 406; Monkhouse v. Hay, 8 Price, 280; Moody v. McDonald, 4 California, 299; Langley v. Warner, 3 Comstock, 329; Moffet v. Sackett, 18 New York, 528.

‡ 13 Stat. at Large, 501.

(1.) Because the court refused to instruct the jury that if they found that the plaintiff abandoned the voyage when he had no right to make the abandonment under the policy, then the plaintiff cannot recover for the insurance on the freight list; but the bill of exceptions states that the court refused to give the charge because it was in proof that an abandonment had been made and accepted without fraud and in accordance with the advice of the defendants, which is all that need be said on the subject.

(2.) Because the court refused to charge the jury that an abandonment made by the plaintiff through error and accepted through error by the defendants, whether conditionally or unconditionally, is null and void, if not warranted at the time, under the policy of insurance; but the bill of exceptions states that the court refused so to instruct the jury because no evidence had been given to show error by either party, which is certainly a good reason for declining to give the instruction.*

(3.) Because the court refused to instruct the jury substantially as in the first request, and which was declined for the same reason.

(4.) Because the court refused to instruct the jury as requested in respect to a policy of reinsurance executed by the defendants on the cargo of the brig; but the record contains no sufficient information that such an instruction was material to the issues between the parties.

(5.) Because the court instructed the jury that, independent of the abandonment, if they believed there was an actual total loss, by storm and disaster of the sea, the plaintiff had a right to recover. Doubt cannot be entertained of the correctness of that instruction as an abstract proposition, and inasmuch as it is not stated in the bill of exceptions that evidence had not been given sufficient to warrant the jury in passing upon the question, it is plain that it furnishes no proper ground to reverse the judgment.

Deviation is also set up as a defence, but the record con-

* United States v. Breitling, 20 Howard, 252; Goodman v. Simonds, 20 Id. 359.

tains no evidence upon the subject, nor is any such question presented in any one of the bills of exceptions.

JUDGMENT REVERSED AND MODIFIED, by disallowing the sum of $5000 damages found by the jury and included in the judgment, and the interest allowed on the same, and the cause remanded with directions to enter a judgment for the plaintiff for the residue found by the jury, with interest.